**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION at ASHLAND**

**Civil Action No. 06-141-HRW**

**OUR LADY OF BELLEFONTE**
**HOSPITAL, INC.,**

**PLAINTIFF,**

**v.**          **MEMORANDUM OPINION AND ORDER**

**TRI-STATE PHYSICIANS**
**NETWORK, INC.,**

**DEFENDANT.**

This matter is upon Plaintiff Our Lady of Bellefonte Hospital, Inc.'s

(hereinafter "OLBH") Motion to Dismiss the Counterclaim of the Defendant

Tri-State Physicians Network, Inc. (hereinafter "TSPN") [Docket No. 7].

**I.**

OLBH filed the instant civil action in Greenup Circuit Court, Greenup

County, Kentucky, claiming damages in excess of $500,000 for alleged

breach by TSPN of three physician recruitment agreements and two

revolving line of credit agreements.  Under the terms of these agreements,

and corresponding promissory notes,  OLBH loaned TSPN money to assist in

the recruitment of physicians, and OLBH agreed to forgive money loaned to

TSPN if certain conditions were met. TSPN, in turn, promised to recruit these physicians to the area and have them maintain privileges at OLBH to serve the hospital community.

The Complaint alleges that TSPN breached these agreements by failing to maintain privileges and offices at OLBH.   The Complaint further alleges that these were default events which triggered automatic and immediate repayment of a total of $500,000 in promissory notes [Attachment # 1 to Docket No. 1].

TSPN removed this action to this Court [Docket No. 1].  In its Answer to the Complaint, TSPN denied OLBH's claims [Docket No. 2].   TSPN also filed a Counterclaim, alleging that OLBH breached **its** agreement to establish medical facilities in Ironton Ohio and enter an exclusive services agreement with TSPN to staff those facilities [Docket No. 2].

In its Counterclaim, TSPN contends that OLBH represented that it intended to purchase River Valley Hospital, a defunct facility in Lawrence County Ohio, renovate it, and reopen it as an urgent care center and that OLBH also intended to open additional outpatient facilities in Southern Ohio. TSPN alleges that OLBH represented that it intended to give TSPN an

2

exclusive services agreement for TSPN to provide the physicians and medical personnel to staff the Southern Ohio facilities.  The Counterclaim further alleges that TSPN incurred costs and obligations in reliance on OLBH's promises and seeks to recover those costs.  Specifically, TSPN claims it lacked the funds to continue to pay the salaries of the subject doctors, but OLBH persuaded TSPN to keep these doctors in its employment by agreeing to provide financial assistance in paying the salaries.  Moreover, TSPN claims that three  doctors were recruited and hired solely for the purpose of having the physicians available to staff the Southern Ohio facilities.  TSPN alleges that but for OLBH's assurances, it would not have entered the physician recruitment and revolving line of credit agreements, which form the basis of OLBH's Complaint.  Although these claims are not reflected in the written agreements, TSPN nonetheless asserts that it is OLBH that breached these contemporaneous agreements, and that the hospital is not entitled to enforce the written agreements.

The Counterclaim contains six counts, 1) breach of contract; 2) estoppel/detrimental reliance; 3) fraudulent misrepresentation; 4) negligent misrepresentation; 5) failure to disclose; and 6) breach of duty of good faith

and fair dealing; and 7) attorney's fees.

OLBH seeks dismissal of the Counterclaim, pursuant to Fed.R.Civ.P. 12(b)(6) [Docket No. 7].

## II.

The purpose of a motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief.  *See, Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  In this case, in order to survive dismissal, TSPN must provide the grounds upon which its claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." ***Bell Atl. Corp. v. Twombly,*** **--- U.S. ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).**   **The Counterclaim must do more than create a "suspicion [of] a legally cognizable right of action."**  ***Id.***   **It must contain sufficient allegations to set forth a "plausible" right to relief.**  ***Id.***

## III.

**A.**   **Count I of the Counterclaim fails to state a claim for breach of contract.**

**1.**   **TSPN fails to allege the existence of a legally enforceable contract.**

**An enforceable contract must contain definite and certain terms setting**

4

forth promises of performance to be rendered by each party, and the "terms must be sufficiently complete and definite to enable the court to determine the measure of damages in the event of breach." *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997).

The Court finds that TSPN's allegations do not set forth the terms of the purported oral contract, the consideration for the performance of the "agreement", or a time specified for anyone to act in any way.  As TSPN has not alleged the terms of the agreement with specificity, the purported contract fails on its face and is not enforceable.

TSPN argues that all that is required is the "short and plain statement" required under Fed.R.Civ.P. 8(a)(2), and that each item need not be pleaded individually.  TSPN urges that the allegations in its Counterclaim, namely that OLBH made an agreement with TSPN to open medical facilities in Ohio, that OLBH agreed to give TSPN an exclusive contract to staff them, that TSPN incurred costs and obligations pursuant to such agreement, and that OLBH then breached the agreement, are sufficient to state a claim for breach of contract.

Although lenient in its requirements, Fed.R.Civ.P. 8 does not absolve TSPN of its obligation to "satisfy federal notice pleading requirements and

allege more than bare assertions of legal conclusions." *Orick v. Banziger*, 945 F.Supp. 1084, 1088 (S.D. Ohio 1996)(addressing the effect of the liberal notice pleading on a plaintiff's obligations in pleading a 1983 complaint). "[W]hen a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *Id.*

TSPN's allegation that some unidentified individual or individuals, presumably with the authority to bind the hospital, made oral representations that the hospital "intended" to expand, and if it did so, "intended" to give TSPN an exclusive services contract are merely conclusory allegations and are insufficient to plead an enforceable contract.

**2.  Even assuming the existence of an enforceable oral contract, it is not enforceable under the Kentucky Statute of Frauds.**

The Kentucky Statute of Frauds provides, in pertinent part:

> No action shall be brought to charge any person . . . .
>
> (7) for contracts that cannot be performed within one year and subsection . . .
>
> (9) for promises to . . . loan money, grant, extend, renew credit, or make any financial accommodation to establish or assist a business enterprise or an existing business enterprise . . .
>
> unless the promise, contract, agreement,

6

> representation, assurance, or ratification, or some
> memorandum or note thereof, be in writing and
> signed by the party to be charged therewith, or by his
> authorized agent. It shall not be necessary to express
> the consideration in the writing, but it may be proved
> when necessary or disproved by parol or other evidence.

K.R.S. § 371.010.

Based upon the allegations in the Counterclaim, the Court finds that the alleged agreement fails to satisfy the Statue of Frauds as the record contains no writing sufficient to indicate that a contract had been formed between the parties.

TSPN argues that the Counterclaim does not trigger the Statute of Frauds as Counterclaim merely alleges an agreement, not an *oral* agreement. OLBH refers this argument as "disingenuous." The Court agrees.  The Counterclaim, while woefully lacking in specificity, explicitly alleges that the hospital's agents  "told" TSPN of the hospital's intent to open Ohio facilities and "represented" that the hospital would give TSPN an exclusive services agreement.   The Counterclaim further states that based upon these "discussions" and in reliance upon the hospital's "representations" and "assurances" TSPN entered into written contracts for financial assistance. The language of the Counterclaim clearly refers to an oral agreement, as

opposed to one made in writing.  Any argument to the contrary is, at best, spurious.

Moreover, if  TSPN maintains that the alleged agreement was not oral, and thus not subject to the State of Frauds, it follows that the agreement is written.  Yet, if there is a writing which memorializes the alleged agreement, why would TSPN not present the same to the Court?   The absence of such a document speaks volumes in OLBH's favor.

Further refuting the applicability of the Statute of Frauds, TSPN states that there is no allegation in the Counterclaim that the agreement could not have been performed within one year.  Rather, TSPN claims there was no reason for it to believe that the agreement would not be performed in a year.  Again, TSPN's own pleading belies its assertion.   In its Counterclaim, TSPN alleges that the hospital made the oral promises "shortly after" January 2001.  Over the next thirteen months, TSPN executed the loan agreements in reliance on the hospital's purported "plans," and each of the loan agreements had terms of at least 24 months.  In addition, TSPN alleges that it did not learn that the hospital did not intend to fulfill its promise until nearly two years after the purported promises were made.  Therefore, based upon its own allegations, TSPN could not have had any doubt that the hospital would

8

perform within one year.

As for the particular provisions of the statute, TSPN contends there is no allegation in its Counterclaim that the agreement was for the extension of loans or other financial accommodations.  Rather, TSPN alleges an agreement to establish medical facilities and award it an exclusive services contract to operate the same.  Notwithstanding TSPN's convoluted arguments, it seems inescapable that the Statute of Frauds does indeed apply here.  There was money being loaned so that TSPN could pay the salaries of its doctors.  The Counterclaim states the same quite clearly [Docket No. 2, Counterclaim at ¶¶ 11-15, 19-20].

### 3. The parol evidence rule precludes any claim of an oral agreement.

It is axiomatic that evidence of  prior or contemporaneous oral agreement which would vary or contradict the terms of the parties' written agreement is prohibited.  The written agreements in this case contain a merger clause, making the agreements completely integrated.   Notably, the written agreements do not refer to any promise by OLBH to open facilities in Southern Ohio or to give TSPN an exclusive services contract.

TSPN correctly states that extrinsic evidence is admissible to establish a

9

separate or contemporaneous agreement which is not inconsistent with a written agreement.   However, the Court is not persuaded that the Counterclaim concerns a separate and independent agreement.   Once again, TSPN is betrayed by its own allegations.   The Counterclaim specifically alleges that the sole reason TSPN entered into the written agreements was because of the purported promises concerning the Ohio facilities [Docket No. 2, Counterclaim, ¶ 11-15, 19-20].

Moreover, TSPN's claim that the oral promises are "separate and independent" is highly questionable;  the oral understandings cannot exist without the written agreement.   The very crux of the Counterclaim is that TSPN would not have entered into the written agreements but for the oral promises of OLBH.  As the two are blatantly inconsistent, the parol evidence rule requires dismissal of this claim.

**B.     Although alleged in Count II of the Counterclaim, neither promissory estoppel nor equitable estoppel apply.**

In order state a claim for promissory estoppel TSPN must plead: a) a promise made by OLBH; b) TSPN reasonably relied on said promise by acting or forbearing to act; c) OLBH, at the time of making its promise, foresaw or expected that TSPN would act or forbear in reliance upon it; and

10

d) that enforcement of the promise is necessary to avoid an injustice. *See, e.g.,*
*Bergman v. Baptist Healthcare Systems, Inc.*, 344 F.Supp.2d 998, 1003 (W.D.
Ky. 2004).

Although not controlling, of particular import here is Judge Heyburn's
opinion in *Davis v. Siemens Medical Solutions Inc.*, 399 F.Supp.2d 785, 797-98
(W.D. Ky. 2005). In *Davis*, the plaintiff sued his employer for additional
compensation arising from his employment relationship. Among other things,
the plaintiff attempted to advance a claim for promissory estoppel based on
an oral promise of additional commissions over and above and in direct
contravention of what the written employment contract promised. Noting a
paucity of Kentucky cases dealing with promissory estoppel, the *Davis* Court
embarked upon a survey of other jurisdictions, identifying the majority rule
as being that a prior inconsistent oral promise cannot form the basis of a
promissory estoppel claim. The rationale being that the written agreement
supercedes and incorporates all prior oral statements covered by the written
agreement. The Court finally noted the trend among Kentucky courts to be
reluctant to contravene the technical requirements of contract law. The *Davis*
opinion thus concluded that the plaintiff could not assert reliance on a prior
inconsistent oral promise to circumvent the terms of the written contract and

11

the parol evidence rule.

The undersigned finds the rationale in *Davis* compelling and on point with the instant case.   Further, this Court is not moved by TSPN's reliance upon  *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557 (6th Cir. 2003) for the premise that promissory estoppel can apply even in the presence of a fully integrated contract.  *Shah* was decided under Tennessee law, however, and is, thus, not at all relevant to this case.


Base upon the record, this Court concludes that an oral promise made prior to the execution of a written agreement that is inconsistent with the unambiguous terms of the written agreement cannot form the basis of a promissory estoppel claim.  Defendant's claim, therefore, fails in this regard.

Nor does the Counterclaim contains allegations sufficient to support a claim for equitable estoppel.   In order to state a claim for equitable estoppel, the pleader must state (1) conduct, including acts, language, and silence, amounting to a representation or concealment of material facts; (2) the estopped party is aware of these facts; (3) these facts are unknown to the other party; (4) the estopped party acted with intention or expectation that his conduct would be acted upon; and (5) the other party in fact relied on this

conduct to his detriment. *S.R.D. v. T.L.B.*, 174 S.W.3d 502, 506 (Ky. App. 2005).

The Counterclaim alleges that without the patient volumes and revenues to be generated by OLBH's Ohio facilities, TSPN could not afford to pay the operating costs and salaries of the doctors [Docket No. 2, Counterclaim ¶ 17]; that in reliance upon OLBH's assurances regarding the Ohio facilities, TSPN incurred expenses and obligations to keep these doctors [Docket No. 2, Counterclaim ¶¶24-24]; and that OLBH knew, or had reason to know of the expenditures and that TSPN would be unable to carry out its obligations without the Ohio facilities [Docket No. 2, Counterclaim ¶¶ 27-28], and that OLBH, despite this knowledge, failed to provide TSPN with any information that it would not open these facilities [Docket No. 2, Counterclaim ¶ 29].

Yet, these allegations, even taken as true, do not state a claim for equitable estoppel. First, equitable estoppel typically only applies where the estopped party engages in a course of conduct amounting to representation or concealment of material facts.[1] As TSPN has not and cannot allege an

---

[1]*See e.g., S.R.D. v. T.L.B.*, 174 S.W.3d 502 (Ky. App. 2005) (husband equitably estopped from denying his paternity and child support obligations after holding himself out as child's father for nine years); *Grayson Rural Elec. v. City of Vanceburg*, 4 S.W.3d 526 (Ky. 1999) (electric utility estopped from contesting a competitor's service rights in a disputed area after

ongoing course of conduct, its claim for equitable estoppel fails.

In addition, the two purported oral representations cannot form the basis of an equitable estoppel claim in light of the merger and integration clauses in the written agreements, which provide:

> **Entire Agreement.**  This Agreement is the entire agreement and understanding of the parties and supersedes any and all other agreements, verbal or otherwise, between the parties concerning this subject matter.  This Agreement may not be amended or modified except by a written instrument executed by the parties to this Agreement.

[Attachment #2, Docket No. 1].

The existence of such a clause seems to vitiate elements (4) and (5) of this claim.   Further, as discussed *supra*, the statute of frauds applies to this case, and there being no exception for equitable estoppel, the claim must be dismissed.

**C.**   **Count III of the Counterclaim fails to state a claim for fraudulent misrepresentation.[2]**

---

failing to compete for customers there for over 50 years); *Farmer v. Gipson*, 257 S.W. 1 (Ky. App. 1923) (landowner estopped from asserting title rights after acquiescing in partition of land for 19 years).

[2]OLBH asserts that TSPN appears to be attempting to state a claim for fraudulent inducement, not fraudulent misrepresentation.  The elements of fraudulent inducement are a representation made as a statement of fact which is untrue, with the intent to deceive, and which is acted upon to the detriment of the defrauded party.  *Wahba v. Don Carlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. App. 1978). Representations as to future conduct will not support a claim

14

Fed. R. Civ. P. 9(b) requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  At a minimum, the Sixth Circuit requires the allegations to contain the "time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993).  The allegations must include "sufficient particularity and . . . sufficient factual basis to support an inference that they were knowingly made."  *Id.*

In this case, TSPN simply alleges:

> [s]hortly after River Valley closed the Lawrence County hospital, the Hospital's agents contacted TSPN and told TSPN that the Hospital desired to have a commercial presence in southern Ohio.  The hospital represented it intended to purchase the Lawrence County hospital, renovate it, and reopen it as an urgent care center and that the Hospital also intended to open additional outpatient care facilities . . .

---

for fraudulent misrepresentation.  *Livermore v. Middlesborough Town-Lands Co.*, 50 S.W. 6, 13 (Ky. App. 1899).  Assuming then, that TSPN meant to plead fraudulent inducement, OLBH argues that the claim fails on its face.

[Docket No. 2, Counterclaim ¶ 6].

Further, the Counterclaim alleges OLBH "represented to TSPN that the Hospital intended to give TSPN an exclusive services agreement for TSPN to provide the physicians and medical personnel to staff the urgent care center and satellite outpatient care facilities . . ." [Docket No. 2, Counterclaim ¶ 8]. "To enable and induce TSPN to keep Dr. Fuller and Dr. Benton in its employment for the Hospital's Ohio facilities, the Hospital agreed to provide TSPN with financial assistance in paying the salaries and related operating costs for these physicians while plans for the Hospital's Ohio facilities were being developed." [Docket No. 2, Counterclaim ¶ 11].

Fatal to its claim for fraudulent misrepresentation is TSPN failure to identify the "agents" of the hospital who made the alleged representations.  Who were they?  Did  they have the real or apparent authority to bind the hospital?   The silence in  response to these questions looms large in the Court's mind in considering TSPN's claim in this regard.

Nor does TSPN identify the exact time or place of the making

16

of these alleged statements.   Again, TSPN's allegations lack specificity and are on the verge of running afoul even the most liberal of notice pleading standards. *See, Foamex supra,* 2 F.3d at 162 ("the threshold test is whether the complaint places the defendant on 'sufficient notice of the misrepresentation,' allowing the defendant to 'answer, addressing in an informed way plaintiffs' claim of fraud")(internal citations omitted).

Further, TSPN's  claims of fraud are barred because predictions for future conduct do not constitute actionable fraud under *Livermore supra.*

In addition, as discussed  *supra,*  the parties' written agreements contain merger and integration clauses.   These merger clauses bar fraudulent inducement claims where, as here, the parties executed a series of written contracts throughout their relationship each of which contained the merger clause. *See Papa John's Int'l, Inc. v. Dynamic Pizza, Inc.*, 317 F. Supp. 2d 740, 744-47 (W.D. Ky. 2004) (finding merger clause was an "airtight provision" that bars any claim based upon fraudulent inducement).

TSPN urges that its fraud claims  are not barred by the

17

merger clauses because TSPN only agreed to the merger clauses because of the alleged fraud.   The Court is not persuaded by such bootstrapping nor is the Court convinced that *In re Sallee*, 286 F.3d 878 (6th Cir. 2002), cited by TSPN in this regard, is on point, as it involved a release clause rather than a merger clause.

    **D.**    **TSPN has not pled the facts necessary to allege a claim for negligent misrepresentation.**

    **First, this Court notes that** that the merger and integration clause bars a claim for negligent misrepresentation under the *Papa John's* logic.

    Further, as discussed *supra*,  false representation was not pled with the particularity required by Fed. R. Civ. P. 9(b).

    Additionally, this Count  must be dismissed because TSPN has

not pled any facts necessary to support this cause of action. Kentucky has adopted the Second Restatement of Torts' statement of the elements of the tort of negligent misrepresentation.  *See Presnell Constr.  Mgrs, Inc. v. EH Constr, LLC*, 134 S.W.3d 575, 580 (Ky. 2004).  The elements are set forth in Section 552:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest supplies false information for the guidance of others in their business transactions is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552 (1997).

OLBH  is in the business of providing medical services to individuals residing in its community and that TSPN has not and cannot allege that the hospital is in the business of supplying information for the guidance of others in their business transactions with third parties.  Likewise, TSPN failed to allege that the hospital failed to use reasonable care in its communications with TSPN or that any "reliance" on the part of TSPN was justified, particularly in light of the series of written agreements containing merger clauses.

TSPN claims that negligent misrepresentation is actionable where a misrepresentation is made in the course of a transaction in which the speaker has a pecuniary interest, such as this case.   However,  fundamental to an allegation of negligent misrepresentation, as stated in the restatement and

*Presnell*, is that OLBH supplied "false information for the guidance of others in their business transactions." There is no such allegation in the Counterclaim. Therefore, Count IV cannot withstand Plaintiff's motion to dismiss.

  **E.** **TSPN has not pled sufficient facts to plead a duty to disclose or failure of the same.**

  A duty to disclose facts exists only where there is a confidential or fiduciary relationship between the parties, when a statute imposes such a duty, or when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure. *Rivermont Inn, Inc. v. Bass Hotels Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. App. 2003).

  TSPN's Count V must be dismissed because it does not allege the existence of a confidential or fiduciary relationship between the parties or a duty created by statute. Likewise, TSPN does not allege that OLBH only partially disclosed material facts. Rather, TSPN alleges that in its conversations with OLBH, the hospital fully disclosed its purported intent to open a hospital in Ohio and simply failed to fulfill those promises. However, the failure to perform two alleged promises does not constitute fraud by omission or a failure to disclose. As such, this claim must be dismissed.

20

**F.**    **TSPN cannot state a claim for breach of duty of good faith and fair dealing.**

In Count VI of its Counterclaim, TSPN claims that the hospital breached its duty of good faith and fair dealing by failing to open the Ohio facilities, by failing to enter into the Urgent Care Services Agreement with TSPN, by failing to disclose to TSPN, during the time TSPN was entering the written agreements and promissory notes,  that it did not intend to open the Ohio facilities, and by seeking to recover on the agreements and promissory notes.

However, TSPN cannot state a claim for breach of the duty of good faith and fair dealing because it cannot allege that this is a case of a "special relationship."   *See, Pioneer Resources Corp. v. Nami Resources Co.*, No. 6:04-465-DCR, 2006 WL 1778318 at *9 (stating that Kentucky courts "typically only find a breach of the duty to act in good faith in those contracts involving 'special relationships,' which are not found in ordinary commercial settings").

The Court notes that unlike the implied covenant of good faith and fair dealing found in every contract, TSPN pleads the *tort* of breach of the duty of good faith and fair dealing.  In order to establish an action in tort based on this theory, a special relationship must be present. *Id.*  Elements of such a

21

special relationship include unequal bargaining power, vulnerability, and trust among the parties. *Id.* TSPN has not alleged unequal bargaining power, vulnerability, or trust between the parties. Nor can such an allegation be made as TSPN and OLBH are two sophisticated business entities who bargained at arm's length. Thus, the claim must be dismissed.

### G. Dismissal of Count VII, TSPN's claim for attorney fees, is premature.

"[W]ith the exception of a specific contractual provision allowing for recovery of attorney's fees or a fee-shifting statute, each party assumes responsibility for his own attorney fees." *AIK Selective Self-Ins. Fund v. Minton*, 192 S.W.3d 415, 420 (Ky. 2006).

While the two revolving line of credit agreements do allow the prevailing party to recover reasonable attorney fees, the three Physician Recruitment Agreements do not. Thus, at best, the only attorney fees TSPN could possibly recover, in the event it prevails, would be the cost of defending OLBH's action to enforce the terms of the two revolving line of credit agreements.

However, the Court finds that TSPN's broad claim for fees, presumably

involving all of the agreements, is inappropriate.  Although the Court is not inclined to dismiss, at this juncture, TSPN's claim in this regard, nor will the Court permit TSPN to, in effect, rewrite the terms of the Physician Recruitment Agreements and insert terms which were not negotiated.

Therefore, the Court will refrain from dismissing this claim at this time. However, the extent of TSPN's claim for attorneys fees will be revisited at a later date.

## IV.

Defendant stretches the bounds of plausibility in its Counterclaim. TSPN fails to identify the person, time or place of the alleges assurances made by OLBH.  Even more glaring is the absence of a contact relative to OLBH's purchase of River Valley Hospital.   These facts are necessary to "raise its right to relief above the speculative level."   *Twombly,* 127 S.Ct. 1955, 1965 (2007).   There is simply not enough before the Court to withstand 12(b)(6) scrutiny.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion to Dismiss Defendant's Counterclaim [Docket No. 7] be SUSTAINED as it pertains to Counts I, II, III, IV, V, and VI and OVERRULED as it pertains to Count VII of the Counterclaim.

**IT IS FURTHER ORDERED that the Counterclaim, with the exception of Count VII, [Docket No. 2] be DISMISSED WITH PREJUDICE.**

**This is an INTERLOCUTORY and NON-APPEALABLE ORDER.**

**This September 27, 2007.**

Signed By:

*Henry R Wilhoit Jr.*

United States District Judge

24